# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case Number: 24-cr-504** |
| **v.** | : | |
| | : | |
| | : | |
| **RANDALL MECK, aka** | : | |
| **RANDY MECK,** | : | |
| | : | **Initial Appearance:  December 23, 2024** |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its request that defendant Randall Meck, hereinafter "MECK" be detained pending trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(A).  MECK is charged with Distribution of Child Pornography on September 27, 2024, in violation of 18 U.S.C. § 2252(a)(2), as part of a larger discussion about traveling internationally for the purpose of sexually abusing children.  Distribution of Child Pornography is a crime of violence and there is no condition or combination of conditions that will reasonably assure the safety of children – either online, in the District of Columbia, or throughout the world – if MECK is released.  Further, MECK's current residence in Singapore, his extensive international travel, and the ongoing investigation into crimes he may have committed in the Philippines present a heightened risk that he will leave the country rather than reappear in court.  As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the conclusion that detention is the only way to protect children in the community and to ensure the defendant's future appearance.

## FACTUAL BACKGROUND

Randall Meck came to the attention of law enforcement in September of 2024 as someone interested in traveling internationally for the purpose of having sex with children.  During the investigation into his international activities, MECK distributed child pornography to an Undercover Officer (UC) working out of Washington D.C.  MECK was initially identified as someone with a sexual interest in children as part of an investigation into a different individual, "TARGET 1" who was a Maryland resident being investigated by the Baltimore, Maryland, FBI Office.

During the course of the Maryland investigation, an FBI agent obtained a search warrant for TARGET 1's Facebook account.  A review of the records for TARGET 1's Facebook Account found chat messages dated between approximately February 11, 2021, and March 6, 2024, between TARGET 1 and another account, which contained the Profile Name "RANDY MECK" and User ID 513805 (hereinafter "MECK").  The user of that account was tentatively identified as Randall Meck, a United States citizen currently living in Singapore.

In messages located in the account of TARGET 1, MECK and TARGET 1 appeared to discuss the sexual abuse of a boy, hereinafter "MINOR VICTIM 1" by both MECK and TARGET 1.  They also appeared to discuss deleting illicit material in their possession.  For example, messages, dated February 11, 2021, between MECK and TARGET 1 were found that read in part:

> MECK: Got any connections in Singapore for some of our favorite fun?
> TARGET 1: Only in the Philippines [*Emojis omitted*]
> MECK: Damn. Guess I'll have to visit.
> TARGET 1: Would be hot to do it together there.
> MECK: Agreed.

Additional messages, dated August 6, 2021, between MECK and TARGET 1 were found which read as follows:

TARGET 1: Sent you an article on telegram.
MECK: Interesting. Time to clean it up.
TARGET 1: Mmmhmmm.
MECK: I deleted what I can find. Then removed my deleted files. Do I need to find them on my laptop too? Not sure if Hidden files in a phone transfer to a laptop.
TARGET 1: If they're connected to your apple iCloud account.
TARGET 1: It said they're going to scan iMessage text files too.
MECK: I don't have any in my messages[1]

Later messages referred to a different individual, hereinafter "TARGET 2."  For example, messages dated October 26, 2022, and March 9, 2023, from MECK to TARGET 1 were found that read, "I'm meeting TARGET 2 in Manila this weekend" and "Going to Manila this weekend," respectively.  Manila is the capital of the Philippines.

Messages dated July 2023, between MECK and TARGET 1 were identified in which they appear to discuss travel and TARGET 2.  This chat read in part:

MECK: Can you ask TARGET 2 to message me on WhatsApp? *[Number redacted]*
TARGET 1: I sent it to him. Last time I talked to him he had to reinstall the app.
MECK: Perfect. Thanks.
TARGET 1: You unsent a message.
TARGET 1: Save that. Am deleting afterwards.
MECK: This is TARGET 2?
MECK: Perfect. Thank you.
MECK: I messaged him.
TARGET 1: Cool. I told him. He was online a bit ago. You going there again?
MECK: Probably in sept.
MECK: He never responded to my WhatsApp.
TARGET 1: He has different phones he uses.
MECK: Yes I figured.
TARGET 1: I pinged him

Additional messages were located dated November 24, 2023, in which MECK and TARGET 1 discuss pictures and apparent sexual acts with MINOR VICTIM 1. These messages read in part:

---

[1] On approximately August 5, 2021, Apple announced its plan to scan photos stored on its customers' iPhones and iCloud accounts for child abuse imagery.

MECK: *[Sent a photo that depicted a white adult male with an Asian minor male who, based on his slight stature and youthful appearance, appears to be between 13-16 years of age. The minor male is not wearing a shirt and is holding his arms around the adult male. This boy appears to be the same boy described above as MINOR VICTIM 1.*
MECK: Happy Thanksgiving.
TARGET 1: Oh my. I'm jealous. I had him a few years ago 😉
TARGET 1: MINOR VICTIM 1.
MECK: Yup.
MECK: How old do you think he really is?
MECK: He shot a huge load all the way up his chest. Hit his chin.
TARGET 1: Daaaaaamn.
TARGET 1: Nice.
TARGET 1: Who brought him to you.
MECK: *[Name Redacted]* and *[Name Redacted]*. *[Name Redacted]* also joined us. Tomorrow is *[Name Redacted]*.
TARGET 1: Send me more pics when you can 😉 looks fun.

Continued messages dated March 6, 2024, between MECK and TARGET 1 were found in which TARGET 1 said he paid TARGET 2 and MECK indicated TARGET 2 may be associated with boys. This chat read in part:

MECK: I'm worried that I haven't heard from TARGET 2 in a couple months. We were talking at least weekly forever.
TARGET 1: Hey what's up.
TARGET 1: I talk to him often.
TARGET 1: Have you messaged him and he didn't respond?
MECK: Yes. Didn't respond to several messages.
TARGET 1: He said he responded to you a bit ago.
TARGET 1: He's diabetic now. I send him money to help. Usually $70 a month or so. Not saying you have to do that if you don't already, but it helps him out.
MECK: Of course. Happy to help him out.
MECK: Amen.
MECK: Guess I owe him a visit. And the boys too.
TARGET 1: *[Emojis omitted]* I need to go back soon.

On July 22, 2024, a search of Virginia Department of Motor Vehicles records located a record for "RANDALL JOHN MECK," with a date of birth in June 1973 and an address in Las Vegas, NV, that included a photograph that matched the photograph of the adult white male in the photograph described above with the boy identified as MINOR VICTIM 1.

Based upon the information identified in the Facebook account of TARGET 1, the Baltimore FBI then obtained a search warrant for the Facebook account of MECK. MECK's Facebook account contained the messages above between MECK and TARGET 1, in addition to earlier messages between MECK and TARGET 1 going back to April 6, 2020. MECK's Facebook account also contains numerous messages between MECK and other individuals.

Notably, Facebook messages from MECK to other individuals, indicate that, as recently as July 24, 2024, MECK was using the social medial application Telegram, with a screen name of "NewGuyForFun." Specifically, on April 27, 2024, and again on July 24, 2024, Meck messaged two different Facebook users and informed them that his Telegram username was "NewGuyForFun."

Records for "Randall J. Meck" provided by Customs and Border Patrol (CBP), with a date of birth in June 1973, show that MECK visited the Philippines during the following time periods: (1) June 12, 2022, through June 16, 2022; (2) October 27, 2022, through October 30, 2022; (3) March 10, 2023, through March 12, 2023; and (4) November 23, 2023, through November 26, 2023.

Additionally, Paypal records associated with MECK indicate that MECK used account 2172766002983146126 to make multiple payments to various individuals in the currency of Philippine Pesos during each of the date ranges that the CBP records indicated that he traveled to that country. Notably, the dates of November 23-26, 2023, correspond to the same period in which MECK chatted with TARGET 1 about MINOR VICTIM 1.

On September 25, 2024, the Baltimore FBI contacted a member of the Child Exploitation and Human Trafficking (CEHT) Task Force in Washington, D.C. and provided information regarding the investigation into TARGET 1 and MECK.

On September 26, 2024, a member of the Washington D.C. CEHT Task Force working in an undercover capacity ("UC") contacted the Telegram account "NewGuyForFun," the account identified by MECK in previous 2024 Facebook chats as one of the Telegram accounts he used. The following are excerpts of the private chats between the UC and NewGuyForFun, believed to be MECK, beginning on September 26, 2024.[2]

**September 26, 2024**

UC: Hey got your contact from a user in a perv sharing room. I asked the group if anyone had contacts or experiences with discreet fun in the Philippines. I am a 38 year old bi perv dad but more on the gay side. I have some experience but looking for a "full experience" let me know if you can guide me in the right direction. Thanks!

NewGuyForFun: Send some vids to prove you're real.

**September 27, 2024**

UC: *[Sends three images][3]*

UC: I'm am real not a collector and looking for a full experience, this is my 6 yo daughter. Like I said I can only do limited things with her in fear she will tell, but I am really wanting a full boy experience.

UC: These are the same panties that I blew a load in when she wasn't there. As you can see she is wearing those same panties.

UC: I hope you're real too, trust is everything. Can you show me your real too?

NewGuyForFun: *[Sends the UC a video over five minutes in length. The video appears to be a compilation video that depicts numerous prepubescent boys being sexually abused by adult men. The abuse includes at least one adult man inserting his penis in the anus of a prepubescent boy.]*

UC: Mmmmm thanks

UC: I am dying to fuck a lil one, I have not had real contact since she was 10 months to 3.

UC: Now I have to be careful and do stuff when she sleeps, but I am more into boys and looking to travel to make a connection

UC: You have a son?

NewGuyForFun: No kids for me. Probably a good thing. Haha

**September 28, 2024**

UC: lol, constant temptation for sure

---

[2] The Telegram chats between the UC and NewGuyForFun span between September 26, 2024 and December 17, 2024.

[3] The images do not depict a real child, nor do they contain child sexual abuse material.

NewGuyForFun: Definitely
NewGuyForFun: I'd be sucking his tiny dick all the time
UC: Mmmmm fuck yeah, I want to suck on a lil cock so bad!!
NewGuyForFun: And bury my tongue into his dirty little asshole

**September 29, 2024**

UC: Oh yes spread it open wide!
NewGuyForFun: Hell yes
UC: Damn I can't wait to eat some lil boy hole.
NewGuyForFun: Me too
NewGuyForFun: I need to go back to manila soon.
NewGuyForFun: Or Penang and meet your boy
UC: Mmm
UC: I would love to go
UC: Would love a contact, I would assume maybe taxi drivers will tell u but I want to make
    sure it's a sure thing and not get got up
UC: What ages have u had there been?
UC: *there
NewGuyForFun: 12-16
UC: Nice!
UC: Would love a 12 yo or younger, be so hot tonight play with some tiny cock and tight
    balls
NewGuyForFun: The guy in Manila finds cute boys for sure
UC: Mmmm how is the cost pretty cheap?
UC: Can I do full penetration with the 12 yo or do the limit what you can do?
NewGuyForFun: I've always had them fuck me just in case. Sucking rimming kissing and
    fucking.
NewGuyForFun: It's relatively cheap.
UC: Mmmm
UC: Sweet, I am seriously looking to go, would love his contact. I just want to do it safely
    and not worry to death lol
NewGuyForFun: Yeah I will reach out to him and get his thoughts on it.
UC: I really appreciate it, I bet they are cute as fuck
NewGuyForFun: Yes they are
UC: Any rules? How is the privacy? Do you go to there place or do they bring them to
    you?
NewGuyForFun: Normally go to a hotel
UC: Ok cool
NewGuyForFun: The handler is in the room to make sure everything is good.
UC: Is Manila the best place you been
UC: Ah ok
NewGuyForFun: Yes. Or siem reap.
UC: Can they get single digit age? I would want like 8-12
NewGuyForFun: I'll ask him
UC: Ok thanks man!

UC: Be hot one day tag team or have group sex with lil ones with another perv lol. That's
    a pedo dream haha
NewGuyForFun: Yes that would be amazing
UC: Maybe one day!
UC: How are they with taking pics or vids?
NewGuyForFun: Not sure. I've taken a few and didn't have a problem. I later deleted them
    all.
UC: I would just be worried having them in my phone coming back to the US.
UC: U in the US too?
NewGuyForFun: No. I live in Asia now

**September 30, 2024:**

UC: Oh really nice!
NewGuyForFun: Yes
UC: Any boys where you live
NewGuyForFun: Not really
UC: Ah, seems live Cambodia and the Philippines is the best for this lol
UC: *like
NewGuyForFun: Yes agreed
UC: My cock is so hard for this lol
NewGuyForFun: Fuck yeah
UC: Can't wait
UC: Any luck on your contact? I'm so ready I wouldn't mind going to siem reap either.
    Whatever is easier and safer
UC: How is your day going
NewGuyForFun: Good here. No update from my contact yet
UC: Ok cool, really appreciate it

**October 1, 2024**

NewGuyForFun: We should plan a trip to manila together
UC: I would love that!
UC: I'm down for sure
NewGuyForFun: Where do you live?
UC: I'm in the DC Virginia area
NewGuyForFun: Oh really. I'll be there for a couple weeks around Xmas
NewGuyForFun: My family is in Chantilly area
UC: Oh wow really? Small world lol
NewGuyForFun: I used to live in Tyson's corner
UC: Oh nice I am living in the Chinatown area now, moved into an apartment after divorce.
NewGuyForFun: Nice!
UC: Ok nice I was in Alexandria
NewGuyForFun: Very small world
UC: Would be fun to travel with like minded, especially with someone who has some
    experience lol

UC: Yes it is, crazy

NewGuyForFun: When do you think you could travel to manila? I can do a weekend trip but you'll probably want a bit longer

UC: I am free after towards the end of October beginning of November or early December. Yeah, I can meet you for a weekend for sure, but because it's so far I would place to stay for two weeks

**October 2, 2024**

UC: Actually, looking at my schedule I am thinking end of December. When are you flying back to Asia from Va? I could go around that time and you can meet me for a weekend. I plan to stay for 2 weeks.

NewGuyForFun: I return to Asia on January 2 and arrive back on January 4

UC: Ok, cool, so can you recommend a good hotel. Do you use a different hotel when you play? I have no problem getting a regular hotel, then rent a "perv" hotel room for the play time. Let me know what you think?

NewGuyForFun: I like the Radison at North EDSA in Quezon City. It's attached to a nice mall with good western restaurants.

NewGuyForFun: The handlers and kids will stay at a different hotel and you just take a bike over to it. They have ride sharing on the back of a motorcycle. Easiest way to get around.

NewGuyForFun: Have you ever been to Asia before?

UC: Ah ok awesome, no never been before really looking forward to it

NewGuyForFun: Cool

UC: How did you know that they were legit and not ripping you off. That would be my concern. Do they give some form of custom validation?

NewGuyForFun: What do you mean? Their age?

UC: Yeah the age and that they actually have access

UC: Did they send a custom pic of the choices

NewGuyForFun: Trust me. He has boys.

NewGuyForFun: And they are young

UC: lol, nice!

UC: Mmmm fuck yeah

UC: Exactly what I like and want

UC: Would he want me to reach out to him?

NewGuyForFun: Yes as it gets closer I'll connect you two

UC: Cool!

UC: Hope to have more than 1 when I'm there haha

NewGuyForFun: Yes. Make it worth your trip. Have 4 or 5.

UC: Yes for sure!!

UC: Do you have a favorite or do u get new ones every time?

NewGuyForFun A couple faves but normally 2-3 new ones each time

UC: Mmmm nice!

*[Chats omitted between October 3, 2024 – October 15, 2024]*

**October 21, 2024**

UC: How you been?
UC: What you been up to?
NewGuyForFun: Traveling with a buddy. Back home now.
UC: Oh nice!
UC: Anywhere fun

**October 23, 2024**

NewGuyForFun: Was in Thailand
UC: Damn! U went without me lol.
UC: How was it?
UC: That's another country on my list lol
UC: Is it worth it?
NewGuyForFun: Plenty of gay massages but harder to find boys
NewGuyForFun: They all want big money
UC: Ah damn, I heard the massages were easy but haven't heard about the boys
UC: That's a shame
NewGuyForFun: Massages are easy to find. And some of them are young (16-19).
UC: Nice!
UC: Any luck with the contact in the Philippines, I am still interested in going. I am thinking right after the holidays in Late December early January
NewGuyForFun: I plan to do in early December I hope
NewGuyForFun: Yes he can help you. Just need to know when you'll be there and what you want.
UC: Ok, I know what I want lol
UC: Boys 8-12 would be ideal
NewGuyForFun: 8-11 will be hard. 12-16 much easier.
UC: Does he want $ upfront? How does it work
NewGuyForFun: Usually pay when you get there. I'll ask him if I can give you his info.
UC: Ok, 12 would be fine
UC: Ok perfect!
UC: Thank you, would love to hang with you whenever your in Virginia if your up for it?
NewGuyForFun: @[Redacted][4]
Meck: That is his screen name. You can message him.
UC: Thank you, appreciate it!
NewGuyForFun: Of course
UC: What name does he call you?
UC: So I can tell him lol
UC: Never mind lol we are talking

---

[4] The investigation into the individual operating the username provided by MECK is ongoing. That individual is believed to be TARGET 2.

**October 29, 2024**

UC: Hey how are you
NewGuyForFun: Hey there. How's it going? How's the chat with my friend?
UC: It's going great, thank you again, I am planning on Jan or Feb trip. He is telling me
     that's the best time
UC: I'm so excited for this can't wait!
NewGuyForFun Yes!
NewGuyForFun: I'll try to meet you there if you want
UC: That would be great I am staying for 2 weeks
UC: So if you wanna meet me for a weekend that would be great
NewGuyForFun: Very hot

*[Chats omitted between October 30, 2024 – November 4, 2024]*

**November 10, 2024**

NewGuyForFun:  Hey man.  I'm ok here.  Just busy as hell with work.  You?
UC:  Nice!  Good to hear from you, same here work has been crazy but doing good.
NewGuyForFun:  Glad to hear that.

**November 11, 2024**

UC:  Yes, same with you.  You ready for the holidays
NewGuyForFun:  Yes I'm looking forward to being home with cold weather.  I love being
     in jeans and a hoodie but can't wear those here or I'll melt.  Not excited about
     talking politics while I'm home but oh well.
UC:  lol I hear ya, it's been quite warm here lately, when you coming to Va ? Maybe we
     can grab dinner ? No politic talk lol
NewGuyForFun :  I'll be in Va Dec 20-Jan 2
UC:  Oh nice ! Long ass flight lol
NewGuyForFun:  Yup. I'm breaking it up this time with a stop in Zurich on the way home
     and Munich in the way back
UC:  Oh nice !! Well I'll be heading to the Philippines just waiting on Ralph to confirm
     some things, he has been sick with pneumonia
NewGuyForFun Oh damn. I need to check in with him.  What dates will you be in manila?
UC:  He told me to come towards the end of January or sometime in February, he said that
     would be best . So I am thinking into the first or second week of Feb . I'll be there
     for 2 weeks
NewGuyForFun:  That should work for me as well. I'll try to come one of the weekends
     that you'll be there. Will be a nice pay day for Ralph. Haha
UC:  Hahaha yes it will, and yes that's perfect. I told him I want a few different ones but
     also want one that has done it before and has a lil experience , I told him to get the
     boy that you were telling me about, the one who shot a load to his chin lol

NewGuyForFun:  I wonder if we are allowed to share them or if we need to do it separately. Also hard to have a kid cum for you then cum for me an hour later. Hmmm. We can work it out.

UC:  Yes true, I wonder if he would allow 2 boys with us at the same time.  I talked to him about it and he said he would try to accommodate.

NewGuyForFun:  By the way remind me to give you tips on navigating Manila before your trip. Download the Grab app. It's Uber of Asia. Be kinda hot to have a little orgy with them. 3 or 4 boys and you and me.

UC:  Omg yes!!! And yes thank you I will download the app, I'm going to be nervous as fuck the first time lol . Were you nervous the first time? Take you any time to get it up?

NewGuyForFun:  I was very nervous  Make sure you have plenty of cash. And realize they will ask for more. Just be firm with what you were offered by Ralph.  Ask him not to send the alcoholic guy. Can't remember his name. He is one of the handlers. He will want to fuck you too and then ask for money. But he's 30. Haha

UC:  Haha. Good to know ! Is there any boy that u had that is a favorite ?Maybe we can include him if we can do the orgy

NewGuyForFun:  Yes but I never remember his name.

UC:  Maybe Ralph will know lol

NewGuyForFun:  Probably He liked kissing, fucking bareback and was also a bit kinky.

UC:  Mmmm fuck yeah! Have you ever met Ralph or just the handlers, he seems really cool

NewGuyForFun:  I've only met the handlers.


On December 2, 2024, MECK asked the UC to exchange photographs and sent a photograph of himself to the UC via the Telegram account "NewGuyForFun."  The photo is copied below as Government's Exhibit A.



*Government Exhibit A*

The adult male depicted in Exhibit A is consistent with photograph associated with the Virginia Department of Motor Vehicles record for Randall Meck and is also consistent with the photograph of the adult male depicted with "MINOR VICTIM 1," both described above.

On November 7, 2024, the Grand Jury indicted MECK for one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). The Court issued an arrest warrant on the same date and both the indictment and arrest warrant were placed under seal at that time. The investigation into additional charges related to MECK's international travel involving children is ongoing.

On December 21, 2024, MECK was arrested upon his arrival in the United States after landing at Dulles International Airport. His initial appearance is expected to be held on December

23, 2024. The United States now asks that the Court detain MECK pending trial, as there are no combination of conditions that will protect children from MECK's predatory sexual behavior – behavior that that encompasses the online world and may cross international boundaries – or assure his return to court.

## **APPLICABLE LEGAL STANDARD**

The defendant is charged with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), a crime of violence. 18 U.S.C. § 3156(c) defines a "crime of violence" to include violations of Title 110, under which § 2252(a)(2) falls. Further, § 2252(a)(2) gives rise to a rebuttable presumption of detention pursuant to 18 U.S.C. § 3142(e)(3)(E), where it is to be *presumed* that no combination of conditions will protect the community or assure the defendant's return. § 3142(e)(3)(E). This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008). Even in situations where the defendant does not pose a flight risk, danger to the community by itself is a sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be

posed by the defendant's release.  *See* 18 U.S.C. § 3142(g).  Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors.  *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased.  Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).").  As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts.  Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial."  *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## <u>ANALYSIS</u>

Defendant MECK poses profound danger to children online and around the world and there are no conditions short of detention that will protect children from the defendant.  Further, MECK's current residence outside of the United States, his extensive international travel, and the ongoing investigation into offenses that took place in a foreign country give rise to a heightened risk that MECK will flee the United States rather appearing for court in the future.  For the reasons that follow, the United States submits that that the defendant cannot rebut the presumption that he shall remain detained, as there is no combination of conditions that will reasonably protect children from MECK's predatory sexual behavior or will assure his return to court in the future.

### A.    Nature and Circumstances of the Offense Charged

On September 27, 2024, defendant MECK distributed child pornography in the form of a compilation video – over five minutes in length – that depicts numerous prepubescent boys being sexually abused by adult men, including at least one adult man inserting his penis into the anus a prepubescent boy.  He did so for the purpose of verifying that he was "real," that is, not law enforcement, after being approached by a person who he had every reason to believe was looking to travel out of the country to sexually abuse children. Not only did MECK distribute child pornography for the express purpose of verifying that he was "real," he has now engaged in ongoing chats for over two months with an undercover officer with the apparent belief that he was helping a "38 year old bi perve dad" to travel to the Philippines to have sex with young children. He has made his sexual interest in children abundantly clear, and his alleged distribution of child pornography is one manifestation of that demonstrated interest.

MECK further highlighted his danger to children throughout the two-month chat that he engaged in with the UC.  During those months, MECK demonstrated zero concern for the children who would be sexually abused in the Philippines and, instead, exhibited excitement and sexual arousal at the suggestion of a future sexual encounters with children.  At the same time, his communications with the UC strongly suggest that he has had sexual encounters with children in the past, that he has produced and deleted sexual images of those children, and that he is interested in having sexual encounters with children in the future.  The nature and circumstances of the charged offense are of the utmost seriousness and weigh heavily in favor of detention.

In addition to the distribution of child pornography, the United States is continuing to investigate whether MECK has engaged in additional violations involving children in foreign countries.  Irrespective of the outcome of that investigation, evidence shows that MECK, who most

recently lived in Singapore, has traveled to the Philippines on at least four occasions.  Notably, his Facebook chats with TARGET 1 on November 24, 2023, correspond with one of those visits to the Philippines.  As transcribed above, on November 24, 2023, MECK sent a photo of himself and MINOR VICTIM 1 to TARGET 1, commenting that "he," meaning MINOR VICTIM 1, "shot a huge load all the way up his chest.  Hit his chin."  In that same Facebook exchange, TARGET 1 confirmed that he had also "had him a few years ago."

The defendant's alleged conduct here is highly disturbing, indicating that he poses a danger to children around the world as well as to children online who are suffering the aftermath of having images of their sexual abuse distributed across the internet.  On a broad level, children depicted in sexually explicit images and videos are victimized at the time the images were created, and they are re-victimized each time an individual, like the defendant, views the images for their own sexual gratification. As explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.

> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Indeed, Congress has recognized the serious nature of the offense that this defendant is charged with, and the long-term damage that crimes such as Distribution of Child Pornography can have, by specifying that these types of crimes carry a rebuttable presumption of detention. § 3142(e)(3)(E). The defendant is alleged to have distributed child pornography in the context of actively facilitating the future sexual abuse of children in a foreign country, while also expressing an interest in participating in that future sexual abuse and suggesting that he has done so previously. There is no combination of conditions that will protect children online and around the world from the defendant's predation and this first factor weighs heavily in favor of detention.

### B. The Weight of the Evidence Against the Defendant

The weight of the evidence against the defendant is very strong and also weighs in favor of detention. The United States is in possession of the more than two-month long Telegram chat conversation between the UC and "NewGuyForFun," including the five-minute video containing child pornography that was distributed on September 27, 2024. The Telegram account "NewGuyForFun" has been tied to MECK in multiple ways. Specifically, MECK provided this as one of his Telegram usernames in Facebook chats that he engaged in with other users in April and July of 2024. Later, on December 2, 2024, MECK, using the NewGuyFor Fun account, asked the UC to exchange photos of themselves. He then sent the photograph in Government's Exhibit A. The adult male in Government's Exhibit A is consistent with MECK's likeness as it appears on his driver's license, in the photo with MINOR VICTIM 1, and on the photo associated with his Facebook profile. The adult male in Government's Exhibit A is also consistent with MECK's appearance upon his arrival in the United States on December 21, 2024. Further, the details that MECK provided in the chats regarding his prior trips abroad are consistent with other evidence,

including evidence of his travel to the Philippines and his knowledge of how to obtain children for sex in that country.

The Court has broad discretion to determine the relative weight of each of the four Bail Reform Act factors, including the weight of the evidence against a defendant, when analyzing whether the defendant poses a danger or is a risk of flight. No factor is categorically of greater or lesser weight than the others. As the Second Circuit Court of Appeals has observed:

> Although § 3142(g) of the Bail Reform Act lists various factors to consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g). That silence is unsurprising, because the weight given to each factor will inevitably vary from case to case, and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight. What is more, certain factors might interact with one another in a particular case in a way that alters a court's analysis of a defendant's danger to the community or flight risk.

*United States v. Zhang*, 55 F.4th 141, 149-50 (2d Cir. 2022). In *Zhang*, the Second Circuit found that the district court gave appropriate weight to the second factor – the weight of the evidence – in determining that there was "significant evidence" that Zhang had in fact committed the charged murder. *Id.* at 150-51. Affirming the district court's relative reliance on the weight of the evidence in determining dangerousness, the court explained:

> In making a predictive assessment of the defendant's future dangerousness if released into the community, common sense and § 3142(g)(2) aligned with the district court's consideration of the strength of this evidence, especially coupled with the nature of the charged offense. It stands to reason that the more strongly the evidence indicated that the defendant committed the murder, the more likely he poses a danger to the community if released on bail.

*Id.* Similarly, in considering whether the defendant poses a risk of flight, the court explained that where "the evidence against a defendant is strong, it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment), and therefore may present an elevated risk of flight. *Id.* at 151-52. The *Zhang* court's analysis is relevant here where the evidence against

MECK is very strong, suggesting both a heightened danger to the community as well as an elevated risk of flight. This is particularly true where MECK has been living outside of the United States for several years and has both ties to and a residence in Singapore. The strength of the evidence strongly supports detention, as it indicates the significant risk of danger posed by the defendant, as well as an elevated risk of flight to avoid accountability on very serious charges.

### C.    History and Characteristics of the Defendant

All publicly available information indicates that MECK has lived as a model citizen; he is a well-respected professional who is currently employed by a luxury hotel located in Singapore. His resume includes both working as an Athletic Director at a high school and at Dartmouth, in addition to working in various managements positions with Hilton brand hotels. He is well-educated and has built an impressive professional career that has given him the opportunity to travel abroad widely. Nonetheless, his private conversations on Facebook and Telegram paint a very different picture of who MECK is. Even while building a successful career, his online communications indicate that he has nurtured a sexual interest in children, most recently distributing child pornography to an undercover officer on September 27, 2024. As suggested by his own chats, he has also traveled to other countries to satisfy that sexual interest.

It should be no surprise that this aspect of MECK's character was not previously known. Individuals with a sexual interest in children do not typically broadcast that interest and, when acting on that interest, frequently take efforts to remain undetected. This appears to be true for MECK who, by his own admission, has deleted various files to conceal his conduct. For example, in his August 2021 Facebook chats with TARGET 1, MECK discussed deleting files so that they would not be detected after Apple announced that it would scan certain accounts for illicit images. He made similar comments on September 29, 2024: when asked by the UC on Telegram, "How

are they [children] with taking pics or vids?" MECK responded, "Not sure. I've taken a few and didn't have a problem. I later deleted them all."

Much is unknown about MECK's conduct beyond what is charged in the indictment. Nonetheless, his own chats demonstrate a previously unknown duplicity and suggest that part of his history and character is far more sinister than previously known.  MECK'S history and characteristics counsel against release.  He has demonstrated that he is a danger to children in both the physical world and online and the United States submits that his demonstrated sexual interest in children, coupled with his willingness to act on that interest, makes him an ongoing danger to any child he may encounter, wherever that may be.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

Finally, the sexual exploitation and coercion of children presents a serious danger to the community, which results in severe mental, emotional, and physical trauma to the countless children who are victimized by offenders like the defendant and others with a demonstrated sexual interest in children.   It is this type of harm that led Congress to create the statutory presumption of detention in these cases.

That child pornography offenses are serious is a fact noted by the Supreme Court. At least as early as the landmark decision, *New York v. Ferber*, 458 U.S. 747 (1982)*,* the Supreme Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography.

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev.

535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the tension of

keeping the act secret that seem to have the most profound emotional repercussions"); Note,

Protection of Children from Use in Pornography: Toward Constitutional and Enforceable

Legislation, 12 U.Mich.J. Law Reform 295, 301(1979)(interview with child psychiatrist) ("The

victim's knowledge of publication of the visual material increases the emotional and psychic harm

suffered by the child"). 458 U.S. 758, n.9.

> Moreover, as the Eastern District of New York has found:

> ...the issue is not only defendant's potential abuse of children and his interaction
> with children if on bail, but also his ability, if he is released on bail, to attempt to
> possess additional child pornography, or to communicate and interact with (via
> email, internet, or phone) others involved in the possession, sale, and distribution
> of child pornography or other sexual abuse of children, which would also create a
> clear danger by facilitating the criminal and dangerous exploitation of children by
> other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006).  The *Reiner* court further found

that there were no conditions in that case that could reasonably assure the safety of the community

"[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." Id. at 399; *see*

*also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (S.D.W.Va.

April 29, 2008)(unpublished)(noting the ease of accessing the internet by means of various devices

and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined

to his home and electronically monitored, defendant would not be prevented from obtaining the

means to access the internet and attempting again to obtain child pornography and in this poses a

danger to children and the community"); *United States v. Doyle,* 2007 WL 1097844, *1 (W.D.Va.

2007)(finding danger of future offenses "especially considering that pornographic images of

children are widely available on the internet and can be easily accessed by a personal computer"),

conviction rev'd on other grounds, 650 F.3d 460 (2011).

Given the risks that the defendant poses to children both online and throughout the world,

there are no conditions or combination of conditions that will reasonably keep children safe and

assure his appearance if he is released.  As such, this factor weighs heavily in favor of detention.

## CONCLUSION

For all of the reasons set forth above, a consideration of the evidence in this case and the

applicable statutory factors compels the conclusion that the defendant should be detained pending

trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar. No. 415082


_____/s/ Jocelyn Bond_____
Jocelyn Bond
D.C. Bar No. 1008904
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 809-0793
Email: Jocelyn.Bond@usdoj.gov